UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHARON FARR,

        Plaintiff,

v.                                                    Case No. 11-C-741

MICHAEL ASTRUE,

        Defendant.

## DECISION AND ORDER

After an unsuccessful application, a hearing before an ALJ, and an appeal, Plaintiff Sharon Farr challenges the decision of the Commissioner of Social Security to deny her disability benefits. She asserts that the ALJ made a number of errors that require remand for a rehearing under 42 U.S.C. § 405(g). For the reasons given below, the decision of the Commissioner will be remanded.

**I. Background**

Plaintiff, who was fifty-two years old at the time of her hearing, had a history involving a number of jobs. For fourteen years she worked as a multipurpose employee at a factory, doing things like hole-punching, silk screening, and anything else the factory needed. (Tr. 39). Following that, she had a string of short-term jobs, including masseuse and cashier.

Her disability claim is founded on an accident she had at work in 2006 when she fell and broke her elbow. The fall also caused pain in her wrist, and in September of that year she had arthroscopic surgery. Early in 2008 she was diagnosed with complex regional pain syndrome

(CRPS) after being referred to a pain specialist, Dr. Szyman. Although initial treatment was positive, Plaintiff returned with complaints that the pain had spread to other parts of her body, especially her ankles. Her physician noted that her pain score was a "2" and that the pain in her upper body had improved, but he noted some discoloration in her lower left extremity. (Tr. 253.) In a letter to Plaintiff's workers compensation attorney, Dr. Szyman noted that it was the opinion of three doctors that Plaintiff had CRPS and that the pain had spread from her arm to her lower extremities. (Tr. 254.) Plaintiff saw Dr. Szyman at least twice more in the next two years. In her 2009 appointments, her right hand had a "dusky hue" to it and was "somewhat clawed." Her left ankle was swollen, sensitive to the touch and had a decreased range of motion. (Tr. 345.) The treatment plan involved spinal cord stimulation and occupational therapy. In her 2010 appointment, she returned to Dr. Szyman due to pain in her right arm, which was "reddish-bluish," swollen and tender to the touch. (Tr. 366.) She described the pain in her wrist as moderate ("5"), which she attributed to recently shoveling snow and using a computer keyboard. (Tr. 365.) She was taking Oxycodone with Acetaminophen for pain, as needed. (Tr. 366.) She could sit in a chair without pain, stand one hour and could walk less than a mile. (*Id.*) She could not lift heavy objects off the floor but could lift from a "convenient level." (*Id.*)

At the hearing Plaintiff testified that she had been receiving shots in her neck for her pain, which she described as a one-and-a-half level of pain. (Tr. 47.) She said Dr. Szyman had indicated, however, that the shots would be discontinued in favor of different treatment, but that had not yet occurred. She stated that she felt pain in her wrist and in both feet, particularly when the weather was cold. She could not stand for more than an hour or wear shoes, like dress shoes, that were not

2

flat. (Tr. 49.) She testified that she experienced a burning sensation in her feet and a swelling that would be brought about by walking or standing too much. (Tr. 50.) She also stated that she used her left hand to lift objects, such as a gallon of milk. Her medications made her feel disoriented, dizzy and sleepy, particularly if she took a Percocet. (Tr. 51.) She testified that currently she was taking classes between four and six hours per day at a technical college in order to become an administrative assistant.

Plaintiff's friend testified that Plaintiff was no longer able to do many of the things she used to do. If they were at a picnic, for example, they would have to find a place to sit down after forty-five minutes, and her walking pace was slower than it used to be. (Tr. 54.) She also had difficulty with dropping things due to the weakness in her right hand.

The ALJ found no disability because he concluded that Plaintiff maintained a residual functional capacity (RFC) to perform light work, with an allowance for limitations based on problems in her right hand. He noted that the state agency physicians had also concluded she could do light work, which means she would be expected to be able to stand for up to six out of eight hours in a typical workday.

**II. Analysis**

On judicial review, a court will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Castile v. Astrue,* 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009). A decision denying benefits need not discuss every piece of evidence, but when an ALJ fails to support her conclusions adequately, remand is appropriate. *Jelinek v. Astrue,* 662 F.3d 805, 811 (7th Cir. 2011).

**A. The Impact of CRPS**

Plaintiff first argues that the ALJ erred by failing to refer to Plaintiff's CRPS and the pain she experienced in her lower extremities. At step two of the sequential process, the ALJ had found a severe impairment of CRPS in her right *upper* extremity, but then he did not ask the vocational expert about any limitations that might stem from her stated problems with walking or standing. Plaintiff argues that the pain in her lower legs was central to her disability claim; in fact, it was only after the CRPS had spread to her legs that she filed for disability in the first place.

The Commissioner notes that one problem with this argument is that Plaintiff alleged disability onset of March 26, 2006, when she fell and broke her elbow, which was long before the pain had spread to her feet and ankles. Thus, Plaintiff apparently never considered the pain in her legs to be the centerpiece of her disability claim. But that is an aside; the real problem is substance. There is evidence in the record that in 2008 and 2009 Plaintiff's left ankle was swollen and that her feet hurt if she stood for extended periods of time or walked long distances. As noted above, Dr. Szyman found her left ankle was swollen, sensitive to the touch and had a decreased range of motion. (Tr. 345.) By 2010 there are no treatment notes regarding the ankles, legs or feet, however. When she returned to Dr. Szyman, the records indicate problems only with her right arm, which had swelling and tenderness. (Tr. 365.) The exam notes indicate that "[c]irculatory, motor, and sensory functions [were] grossly intact to the 2 lower extremities." (Tr. 366.) The Commissioner reads the absence of any problems with the lower extremities in 2010 as evidence that the condition in her lower body had healed. As such, the government believes the ALJ did not err by failing to include a limitation based on her stated problems of walking and standing.

4

Although that is an ostensibly plausible reading of the record, the regulations counsel otherwise:

> When longitudinal treatment records document persistent limiting pain in an area where one or more of these abnormal signs has been documented at some point in time since the date of the precipitating injury, disability adjudicators can reliably determine that RSDS/CRPS is present and constitutes a medically determinable impairment. It may be noted in the treatment records that these signs are not present continuously, or the signs may be present at one examination and not appear at another. Transient findings are characteristic of RSDS/CRPS, and do not affect a finding that a medically determinable impairment is present.

SSR 03-02p.

In other words, because the disease is "transient," the fact that her ankles were apparently not swollen at a single appointment in 2010 does not mean her condition was healed; it simply means she might have been having a good day, or good week. As with bipolar disorder or many other diseases whose disabling nature is difficult to quantify, an ALJ cannot rely on a single positive record or piece of evidence to question what appears to be a more chronic problem. (And here, it is not the ALJ drawing this conclusion but the government's brief.) Had the 2010 medical records actually stated that the lower extremity problem was healed, it would be another matter. But under the regulations quoted above, the mere absence of symptoms during a single office visit does not suffice to undercut the rest of the evidence supporting the fact that Plaintiff experienced pain in her lower extremities.

It might also be argued that Plaintiff's stated limitations were not particularly severe. Her friend testified that Plaintiff could no longer dance and that she would need to sit down after walking for a half-hour or forty-five minutes. (Tr. 54.) Plaintiff's own testimony was merely that she experienced swelling after walking or extended standing. "It's standing for more than an hour,

5

wearing any kind of shoes that are not flat. So like, you know, any kind of dress shoes are out of the question. Walking any distance." (Tr. 49.) She also stated that she had "a burning sensation above the ankle, where the skin turns bright red," as well as swelling. (Tr. 50.) Millions of Americans cannot stand for forty-five minutes at a stretch and have difficulty walking, but the vast majority of them are not considered disabled.

Even so, Plaintiff's CPRS is well-documented and the ALJ's conclusion that she could do light work is not fully consistent with her stated symptoms, at least on the surface. Light work involves standing or walking for a total of approximately 6 hours of an 8-hour workday. SSR 83-10. It is true that one need not stand or walk for 6 hours in a row: the regulations note that the standing or walking can be "off and on" and that "sitting may occur intermittently during the remaining time." *Id.* But the heart of light work is that it "requires a good deal of walking or standing." SSR 83-10. It is not obvious that someone with swollen ankles and painful feet would be able to handle standing or walking six hours per day even if she were afforded several short breaks. But the point here is not whether this Plaintiff could do that; the point is that this issue was not discussed by the ALJ either in his opinion or as part of the question posed to the vocational expert.

In determining Plaintiff's RFC, the ALJ noted that Plaintiff's orthopedic surgeon opined in 2008 that she had the ability to do light duty work with some limitations on gripping and pinching with her hand. The ALJ also noted that more recently, two state agency physicians had concluded that she was capable of light work. Dr. Chan had not discussed her lower extremity problems, but Dr. Khorshidi's 2009 opinion discussed her lower left extremity, noting that it had a restricted range

6

of motion, but that motor, sensory and circulatory functions were intact to all four extremities. (Tr. 360.) Dr. Khorshidi also concluded Plaintiff was capable of light work. Thus, it is conceivable that the ALJ, on remand, could agree with Dr. Khorshidi's opinion that Plaintiff was capable of light work. The fact that Plaintiff's ankles were sometimes swollen or painful would not, on its own, disqualify her for light work (as Dr. Khorshidi apparently concluded). And, as the government notes, it was not as though Dr. Szyman offered any opinion that Plaintiff's pain in her lower extremities would prohibit her from working. But this must be fleshed out, and the medical evidence of the CRPS in her lower extremities must be considered along with Plaintiff's testimony.

For example, in *Herron v. Shalala,* 19 F.3d 329 (7th Cir. 1994), which the Commissioner does not address, the claimant testified that his motor skills had deteriorated. *Id.* at 333. This was supported by his physician's statement that "sarcoidosis and scleroderma could cause both inflammation or irritation of the joints inducing pain and an abnormal curvature of the fingers that would progressively worsen." *Id.* The ALJ, however, "failed to make any assessment of the medical evidence and testimony relating to Herron's hand impairment." *Id.* The Seventh Circuit remanded the case in part because "Herron's hand impairment is a symptom of sarcoidosis, and that diagnosis, given by Dr. Freeman and accepted by the ALJ, is supported by the medical evidence. Thus, the ALJ was not free to dismiss Herron's hand impairment without explaining why he reached that conclusion 'in a manner sufficient to permit an informed review.'" *Id.* at 334 (citation omitted).

In *Herron,* as here, there was medical evidence that supported the plaintiff's claims about limited functionality. Thus, the testimony was fully consistent with the medical records, and the ALJ needed to articulate why he was not crediting that limitation.

7

**B. Credibility**

Plaintiff also argues that the ALJ erred by discounting her credibility and employing the boilerplate phrase that has received the disapproval of numerous courts.

> Like any determination by the ALJ, the findings concerning [claimant's] credibility must be supported by substantial evidence. Further, the ALJ must explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record. *See Skarbek v. Barnhart,* 390 F.3d 500, 505 (7th Cir. 2004); *Brindisi ex rel. Brindisi v. Barnhart,* 315 F.3d 783, 787–88 (7th Cir.2003). As long as the ALJ has explained her decision, this court 'will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Skarbek,* 390 F.3d at 504.

*McKinzey v. Astrue,* 641 F.3d 884, 890 (7th Cir. 2011).

Thus, the question here is whether the ALJ's credibility determination was "patently wrong." Although it is true that the ALJ did use the common boilerplate—boilerplate which is both meaningless and confusing—he elaborated on his findings. He noted that Plaintiff's claim that her medications made her disoriented were belied by the fact that she attended classes four to six hours per day. That is a reasonable explanation for his finding, and at the very least it is not patently wrong. And, despite her claims of pain in her right arm, she continued to type on keyboards and even shoveled snow. This might somewhat undermine her claims based on limited use of her hands (although the medical record shows that using keyboards caused her pain), but it does not impact the issues with her lower extremities because shoveling snow on a single occasion does speak to whether someone could work in a job five days a week when the job required standing for six hours. In sum, although I could not conclude that the ALJ was patently wrong to discount her credibility as to the limitations with her hands (particularly because he incorporated a limitation into the RFC), the ALJ's credibility determination did not address the issues in her feet. Accordingly, on remand

8

the ALJ should address the weight to be given to the statements supporting Plaintiff's difficulty walking and standing.

**III. Conclusion**

For the reasons given above, the decision of the Commissioner is **REMANDED** under sentence four for proceedings consistent with this opinion.

Dated this   24th   day of September, 2012.

                                 s/ William C. Griesbach
                                 William C. Griesbach
                                 United States District Judge